BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ELAINE A. RYAN (*To be admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (203111)
LINDSEY M. GOMEZ-GRAY (*To be admitted Pro Hac Vice*)
2325 E. Camelback Road, #300
Phoenix, AZ  85016
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone:    (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER (234464)
600 W. Broadway, Suite 900
San Diego, California 92101
tcarpenter@bffb.com
Telephone:  (619) 756-6978

Stewart M. Weltman
122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone:  312-427-3600
Fax: 312-427-1850
sweltman@weltmanlawfirm.com
(OF COUNSEL LEVIN FISHBEIN SEDRAN & BERMAN)

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA FRANCO, On Behalf of Herself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NEUTROGENA CORPORATION, a Delaware corporation, <br><br> Defendant. | Case No.:  3:12-cv-01991-MMA-MDD <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> 1.  VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; <br> 2.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, SBN *et seq.*; and <br> 3.  BREACH OF EXPRESS WARRANTY. <br><br> DEMAND FOR JURY TRIAL |

Plaintiff Andrea Franco brings this action on behalf of herself and all others similarly situated against Defendant Neutrogena Corporation and states:

## NATURE OF ACTION

1.      Neutrogena distributes, markets and sells several over-the-counter sunscreen products formulated with Neutrogena's patented Helioplex technology:  20 products with a SPF of 55, 70, 85, 100 or 110 (the "Neutrogena SPF 55-110 collection")[1] and one product with a SPF of 50.[2] The Products' active ingredients are identical. The Products' labels, with the notable exception of the SPF value, make virtually identical representations – promising that the Products, all formulated with Helioplex, provide broad spectrum protection against UVA and UVB rays.  The Neutrogena SPF 55-110 collection retails for a premium over comparable products, including other Neutrogena SPF 50 sunscreen products.

2.      Developed over 30 years, the Sun Protection Factor ("SPF") is the most accepted method for evaluating the photo-protective efficacy of sunscreens, being universally considered as the main information in the labeling of sunscreens.  The SPF value indicates the level of sunburn protection provided by the sunscreen product.  All sunscreens must be tested according to a SPF test procedure.  The test measures the

---

[1]The SPF 55-110 Collection includes: (1) Ultra Sheer Dry-Touch Sunblock SPF 55 ("Neutrogena Ultra Sheer SPF 55"); (2) Clear Face Liquid Lotion Sunblock SPF 55 ("Neutrogena Clear Face SPF 55"); (3) Ultra Sheer Dry-Touch SPF 70 ("Neutrogena Ultra Sheer Dry-Touch SPF 70"); (4) Ultra Sheer Liquid Daily Sunblock SPF 70 ("Neutrogena Ultra Sheer Liquid SPF 70"); (5) Ultra Sheer Body Mist SPF 70 ("Neutrogena Ultra Sheer Mist SPF 70"); (6) Fresh Cooling Body Mist Sunblock SPF 70 ("Neutrogena Fresh Cooling SPF 70"); (7) Age Shield Face Sunblock Lotion SPF 70 ("Neutrogena Age Shield Face SPF 70"); (8) Ultimate Sport Sunblock Lotion SPF 70+ ("Neutrogena Ultimate Sport SPF 70+"); (9) Sport Face Sunblock Lotion SPF 70+ ("Neutrogena Sport Face SPF 70+"); (10) Wet Skin Kids Sunblock Spray SPF 70+ ("Neutrogena Wet Skin Kids Spray SPF 70+"); (11) Wet Skin Kids Sunblock Stick SPF 70+ ("Neutrogena Wet Skin Kids Stick SPF 70+"); (12) Wet Skin Sunblock Spray SPF 85+ ("Neutrogena Wet Skin SPF 85+"); (13) Ultra Sheer Dry-Touch Sunblock SPF 85+ ("Neutrogena Ultra Sheer SPF 85+"); (14) Ultimate Sport Sunblock Spray SPF 100+ ("Neutrogena Ultimate Sport SPF 100+"); (15) Ultra Sheer Body Mist Sunblock SPF 100+ ("Neutrogena Ultra Sheer SPF 100+"); (16) Ultra Sheer Dry-Touch Sunblock SPF 100+ ("Neutrogena Ultra Sheer Dry-Touch SPF 100+"); (17) Spectrum+ Advanced Sunblock Spray SPF 100+ ("Neutrogena Spectrum+ Spray SPF 100+"); (18) Spectrum+ Advanced Sunblock Lotion SPF 100+ ("Neutrogena Spectrum+ Lotion SPF 100+"); (19) Spectrum+ Face Advanced Sunblock Lotion SPF 100+ ("Neutrogena Spectrum+ Face SPF 100+"); and (20) Age Shield Face Sunblock Lotion SPF 110 ("Neutrogena Age Shield Face SPF 110"). Plaintiff reserves the right to include other products upon completion of discovery.

[2] Wet Skin Sunblock Spray SPF 50 ("Neutrogena SPF 50").

1    amount of ultraviolet (UV) radiation exposure it takes to cause sunburn when a person is

2    using a sunscreen in comparison to how much UV exposure it takes to cause a sunburn

3    when they do not use a sunscreen. The product is then labeled with the appropriate SPF

4    value indicating the amount of sunburn protection provided by the product. Because SPF

5    values are determined from a test that measures protection against sunburn caused by

6    ultraviolet B (UVB) radiation, SPF values only indicate a sunscreen's UVB protection.

7         3.    Consumers have become familiar with SPF values because SPF values have

8    appeared on sunscreen product labels for many decades. Consumers have learned to

9    associate higher SPF values with greater sun protection. Consumers reasonably assume,

10   for example, that a product with a SPF of 100+ (like Neutrogena Ultimate Sport SPF

11   100+) provides twice the protection of a sunscreen product with a SPF of 50 (like

12   Neutrogena SPF 50). It does not. In fact, none of the sunscreen products in the

13   Neutrogena SPF 55-110 collection provide any additional clinical benefit over Neutrogena

14   SPF 50. According to the FDA, who has been examining maximum SPF values since

15   1978, sunscreen products with SPF values over 50 do not provide any increase in clinical

16   benefit over SPF 50 sunscreen products. The FDA's findings are based on, *inter alia*,

17   scientific tests that demonstrate SPF 100 sunscreens block 99 percent of UV rays, while

18   SPF 50 sunscreens block 98 percent – an immaterial difference that provides no additional

19   clinical benefit to consumers against sunburn.

20        4.    Neutrogena's SPF 55, 70, 85, 100 and 110 representations on its Neutrogena

21   SPF 55-110 collection are false, misleading, and reasonably likely to deceive the public.

22   Indeed, the FDA has expressed "concern[ ] that labeling a product with a specific SPF

23   value higher than 50 would be misleading to the consumer." 76 Fed. Reg. 35672, 35674.[3]

24   "[T]he agency is concerned that an average sunscreen consumer may ascribe more to high

25   SPF values than is clinically relevant and that such products may further encourage the

26

27   _____

     [3] The FDA has proposed a rule that would cap SPF values at "50+". 76 Fed. Reg. 35672.

28

                                              2

use of sunscreens as a safe way to prolong exposure."  65 Fed. Reg. 36319.

5.    In addition to misrepresenting the SPF value of the Neutrogena SPF 55-110 collection, Neutrogena misrepresents that the Neutrogena SPF 55-110 collection are "sunblock" products. Neutrogena also misrepresents that all but one of the SPF 55-110 collection products are "waterproof" and "sweatproof."   For example, Neutrogena represents on the Ultimate Sport SPF 100+ label that the Product is not only "ultra sweatproof, waterproof" but also "specially formulated to withstand sunscreen's biggest wear off factors: water, rubbing, sweat and wipe-off for superior protection that lasts through vigorous activity."

6.    The "sunblock," "sweatproof," and "waterproof" representations, particularly when coupled with the "SPF 55-110" representations, lull consumers into a false sense of security that they need not reapply the Products except "after swimming, excessive perspiration [or] towel drying" as directed on the back of the Products' labels. Scientific studies establish that sunscreen products are not "waterproof,"[4] are not "sweatproof", do not "block" all UV radiation and must be reapplied every 2 hours to maintain their effectiveness even absent exposure to water or sweat.  Based on these studies, among other evidence, the FDA has identified the terms "sunblock", "sweatproof" and "waterproof" as "false and misleading." 21 C.F.R. §201.327(g).[5]  The FDA also has implemented regulations that require the directions for sunscreen products (including water resistant products) to specify, among other things, the product must be reapplied "at least every 2 hours." 21 C.F.R. §201.327(e)(4).  Neutrogena's "sunblock," "sweatproof," and "waterproof" claims are false, misleading and reasonably likely to deceive the public.

7.    Neutrogena has employed numerous methods to convey its uniform, deceptive "sunblock," "sweatproof," and "waterproof" sunscreen representations to

---

[4]  At best, some sunscreen products are "water resistant," but no product is "waterproof."  *See* 76 Fed. Reg. 35620.

[5]  The regulation went into effect on June 18, 2012.  Companies, including Neutrogena, have until at least December 17, 2012 to comply with the regulation. 77 Fed. Reg. 27591.

consumers, including advertising inserts, the internet and, importantly, on the SPF 55-110 collection labels where they cannot be missed by consumers.

8.     The only reason a consumer would purchase a Product from the premium priced SPF 55-110 collection instead of less expensive, lower SPF value sunscreen products, including Neutrogena SPF 50, is to obtain a "sunblock," "sweatproof," and "waterproof" sunscreen product with greater UVB radiation protection (collectively, the "sun protection claims"), which the SPF 55-110 collection does not provide.

9.     As a result of Neutrogena's sun protection claims, consumers – including Plaintiff and members of the proposed Class – have purchased Products that do not perform as advertised.

10.     Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased Products in the Neutrogena SPF 55-110 collection to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased these Products.  Based on violations of state unfair competition laws and Neutrogena's breach of express warranty, Plaintiff seeks injunctive and monetary relief for consumers who purchased Products in the Neutrogena SPF 55-110 collection.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendant.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to the alleged claims occurred in this District and because Defendant:

- is headquartered in this District;

4

- is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution, and sale of its Neutrogena SPF 55-110 collection in this District; and

- does substantial business in this District.

## PARTIES

13.     Plaintiff Andrea Franco resides in El, Centro, California.  In or around May 2012, Plaintiff was exposed to and saw Neutrogena's sun protection claims by reading the Ultimate Sport SPF 100+ label.  In reliance on the sun protection claims, Plaintiff purchased Ultimate Sport SPF 100+ at a Target in Imperial, California.  She paid approximately $11.00 for the Product.  The Ultimate Sport SPF 100+ Plaintiff purchased did not provide superior UVB protection, was not a "sunblock", was not "waterproof" and was not "sweatproof" as represented.  As a result, Plaintiff suffered injury in fact and lost money. Had Plaintiff known the truth about Neutrogena's misrepresentations and omissions, she would not have purchased the Ultimate Sport SPF 100+ product.

14.     Defendant Neutrogena Corporation is a Delaware corporation headquartered at 5760 West 96th Street, Los Angeles, California 90045.  From its headquarters in Los Angeles, Neutrogena manufactures, distributes, markets and sells the Neutrogena SPF 55-110 collection to consumers nationwide and created the sun protection claims, which it caused to be disseminated to consumers nationwide.

## FACTUAL ALLEGATIONS

*The Neutrogena SPF 55-110 collection*

15.     Neutrogena distributes, markets and sells a variety of products for the skin, hair, and face.  This lawsuit concerns the Neutrogena SPF 55-110 collection.  The Neutrogena SPF 55-110 collection is sold online and at a variety of third-party retailers including Wal-Mart, Target, Walgreens and CVS.

16.     Since launching the Products in the Neutrogena SPF 55-110 collection,

Neutrogena has consistently conveyed the message to consumers throughout the United States, including California, that the Neutrogena SPF 55-110 collection are "sweatproof", "waterproof", and "sunblock" Products and that the Products' 55, 70, 85, 100 and 110 SPF values provide greater UVB protection than lower SPF valued products, like Neutrogena SPF 50. They do not. Neutrogena's sun protection claims are false, misleading and deceptive.

17. There are only two material differences between the Products in the Neutrogena SPF 55-110 collection and Neutrogena SPF 50: (1) the SPF values; and (2) the price. The Neutrogena SPF 55-110 collection retails for a premium over comparable products, including other Neutrogena SPF 50 sunscreen products. The Neutrogena SPF 55-110 collection and Neutrogena SPF 50 contain the same active ingredients and, except for the SPF value, make virtually the same representations:

| Product | SPF | Superior Broad Spectrum UVA/UVB Protection With Helioplex | Same Active Ingredients[6] | Additional Misrepresentations |
|---|---|---|---|---|
| Neutrogena SPF 50 | 50 | Formulated with Helioplex, it provides superior broad-spectrum UVA/UVB protection | ✓ | |
| The Neutrogena SPF 55-110 collection | | | | |
| Neutrogena Ultra Sheer Dry-Touch SPF55 | 55 | Neutrogena Ultra Sheer with Helioplex provides superior broad- spectrum UVA/UVB protection | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Clear Face SPF 55 | 55 | Formulated with Helioplex, it provides superior broad-spectrum UVA/UVB protection | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Ultra Sheer Dry-Touch 70 | 70 | Stabilized with Helioplex, it provides superior balanced broad-spectrum protection against skin aging UVA and burning UVB rays. | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Ultra Sheer Liquid SPF 70 | 70 | Helioplex broad spectrum UVA-UVB | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Ultra Sheer Mist SPF 70 | 70 | Stabilized with Helioplex, it provides superior balanced broad-spectrum protection | ✓ | Sunblock Sweatproof Waterproof |

[6] The active ingredients include: Avobenzone; Homosalate; Octisalate; Oxybenzone; and Octocrylene.

6

| | | | | | |
|---|---|---|---|---|---|
| | | | against skin aging UVA and burning UVB rays. | | |
| Neutrogena Fresh Cooling SPF 70 | 70 | With Helioplex broad spectrum UVA-UVB | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Age Shield Face SPF 70 | 70 | Helioplex broad spectrum UVA-UVB | ✓ | Sunblock |
| Neutrogena Ultimate Sport SPF 70+ | 70+ | Neutrogena Ultimate Sport Sunblock with Helioplex provides superior broad-spectrum UVA/UVB protection | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Sport Face SPF 70+ | 70+ | With Helioplex broad spectrum UVA-UVB | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Wet Skin Kids Spray SPF 70+ | 70+ | Formulated with Helioplex, it provides superior broad-spectrum UVA/UVB protection | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Wet Skin Kids Stick SPF 70+ | 70+ | Formulated with Helioplex, it provides superior broad-spectrum UVA/UVB protection | ✓ | Sweatproof Waterproof |
| Neutrogena Wet Skin SPF 85+ | 85+ | Formulated with Helioplex, it provides superior broad-spectrum UVA/UVB protection | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Ultra Sheer Dry-Touch SPF 85+ | 85+ | Neutrogena Ultra Sheer Sunblock is a breakthrough in sun protection. Stablized with Helioplex, it provides superior broad- spectrum UVA/UVB protection | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Ultimate Sport SPF 100+ | 100+ | Neutrogena Ultimate Sport Sunblock with Helioplex provides superior broad-spectrum UVA/UVB protection | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Ultra Sheer Body Mist SPF 100+ | 100+ | Neutrogena Ultra Sheer Body Mist Sunblock with Helioplex provides superior broad-spectrum UVA/UVB protection | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Ultra Sheer Dry-Touch SPF 100+ | 100+ | Neutrogena Ultra Sheer with Helioplex provides superior broad- spectrum UVA/UVB protection | ✓ | Sunblock Sweatproof Waterproof[7] |
| Neutrogena Spectrum+ | 100+ | Formulated with Helioplex 360, it provides comprehensive | ✓ | Sunblock Sweatproof |

---

[7] Neutrogena recently changed its Ultra Sheer Dry-Touch SPF 100+ label to omit the words "sunblock", "waterproof" and "sweatproof."

7

| Spray SPF 100+ | | full spectrum UVA/UVB protection | | Waterproof |
|---|---|---|---|---|
| Neutrogena Spectrum+ Lotion SPF 100+ | 100+ | Helioplex 360 comprehensive full spectrum UVA/UVB protection | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Spectrum+ Face SPF 100+ | 100+ | Helioplex 360 comprehensive full spectrum UVA/UVB protection | ✓ | Sunblock Sweatproof Waterproof |
| Neutrogena Age Shield Face SPF 110 | 110 | Helioplex broad spectrum UVA-UVB | ✓ | Sunblock Sweatproof Waterproof |

18.     A sunscreen's SPF value is calculated by comparing the time needed for a person to burn unprotected with how long it takes for that person to burn wearing sunscreen.  So a person who turns red after 20 minutes of unprotected sun exposure is theoretically protected 15 times longer if they adequately apply SPF 15.  Importantly, the SPF rating system is non-linear. Also importantly, scientific studies establish that sunscreen products with SPF values over 50 provide no additional clinical benefit to consumers. SPF 100 blocks 99 percent of UV rays, while SPF 50 blocks 98 percent, an immaterial difference that yields no clinical benefit to consumers.  Scientific studies also demonstrate that sunscreen products are not "waterproof," are not "sweatproof," do not "block" all UV radiation, and must be reapplied at least every 2 hours, and sooner if swimming or sweating heavily, to maintain their effectiveness.  The FDA already has ruled that the terms "waterproof,"[8] "sweatproof"[9] and "sunblock"[10] are "false and misleading" and has banned their use.  *See* 21 C.F.R. §201.327(g).  The FDA also requires directions on over-the-counter sunscreen products be revised to state the products must be

---

[8] "The agency is concerned . . . that the term 'waterproof' . . . may be confusing or misleading to consumers because of the manner in which consumers may consider this term. The term 'waterproof' is defined as 'impenetrable to or unaffected by water.' . . . The agency believes that the term 'waterproof' could be interpreted by consumers to describe something that is completely resistant to water regardless of time of immersion, a meaning which is not consistent with the meaning of the term in the Panel's recommended monograph." 58 Fed. Reg. 28194, 28228; 64 Fed. Reg. 27666, 27675-27676.

[9] *See* 76 Fed. Reg.35620, 35643 (agreeing that the term "sweatproof" is false and misleading because the term is essentially an exaggeration of performance that the FDA "does not think can be substantiated").

[10] "The agency is concerned that the term 'sunblock' on the label of sunscreen drug products will be viewed as an absolute term which may mislead or confuse consumers into thinking that the product blocks all light from the sun." 64 Fed. Reg. 27666, 27680.

reapplied "at least every 2 hours." *Id.* at §201.327(e)(4).

19.   And, to stop the false sense of security high numbered SPF products create in the minds of consumers, in June 2011 the FDA proposed a regulation governing the labeling of sunscreen products that would cap SPF values at "SPF 50+." *See* 76 Fed. Reg. 35672.   According to the FDA, there is insufficient data "to establish that products with SPF values higher than 50 provide additional clinical benefit over SPF 50 sunscreen products." *Id.* at 35673. In fact, scientific studies establish that there is no added clinical benefit associated with SPF values over 50. The FDA's proposed SPF 50+ rule harmonizes with other countries, including Australia and the European Union, that have imposed similar SPF labeling restrictions to reduce consumer confusion.

20.   Neutrogena's sun protection claims are designed to take advantage of health conscious consumers seeking protection from the damaging effects of unprotected sun exposure as increasingly expressed by members of the medical community and documented by the media. Each and every consumer who purchases a product in the SPF 55-110 collection is exposed to the 55, 70, 85, 100 or 110 SPF values, which appear prominently and conspicuously on the front and center of the Product label set-off from the other representations. The front shots of the SPF 55-110 collection labels appear as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



















1
2
3
4
5
6
7
8
9
10

   

11

12

13   21.   The back panel of a representative Neutrogena Ultimate Sport SPF 100+

14   spray can represents, *inter alia*, that the Product is "Ultra sweatproof, waterproof," and

15   formulated with Helioplex to provide "superior broad-spectrum UVA/UVB protection."

16   However, nowhere in the directions or elsewhere on the tube does Neutrogena instruct the

17   consumer the Product must be reapplied at least every 2 hours to maintain effectiveness,

18   but instead represents the Product is "specifically formulated to withstand sunscreen's

19   biggest wear off factors: water, rubbing, sweat and wipe-off."

/ / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27

28



***The Impact of Neutrogena's Wrongful Conduct***

22.     Despite the scientific evidence that SPF values higher than 50 provide no additional clinical benefit, no sunscreen is "waterproof", "sweatproof" or "blocks" all UV radiation, and sunscreens must be reapplied at least every 2 hours to maintain their effectiveness, Neutrogena continues to claim that the SPF 55-110 collection provides superior UVB protection and sells the Products for a price premium over lower value SPF products, including Neutrogena SPF 50.

23.     As the distributor of the SPF 55-110 collection, Neutrogena possesses specialized knowledge regarding the content and effects of the ingredients contained in its Products, and is in a superior position to learn of the effects – and has learned of the effects – its Products have on consumers.

13

24.     Specifically, Neutrogena knew or should have known, but failed to disclose that the SPF 55-110 collection does not provide superior UVB protection compared to less expensive, lower value SPF products, including Neutrogena SPF 50.

25.     Plaintiff and Class members have been and will continue to be deceived or misled by Neutrogena's deceptive sun protection claims. Plaintiff purchased and applied Neutrogena Ultimate Sport SPF 100+ during the Class period and in doing so, read and considered the Neutrogena Ultimate Sport SPF 100+ label and based her decision to buy and pay a premium for Neutrogena Ultimate Sport SPF 100+ on the sun protection claims. Neutrogena's sun protection claims were a material factor in influencing Plaintiff's decision to purchase and use Neutrogena Ultimate Sport SPF 100+. Plaintiff would not have purchased Neutrogena Ultimate Sport SPF 100+ had she known that the Product does not provide the represented sun protection.

26.     As a result, Plaintiff and the Class members have been damaged by their purchases of the SPF 55-110 collection and have been deceived into purchasing Products that they believed, based on Neutrogena's representations, provide superior UVB protection compared to less expensive, lower valued SPF products, including Neutrogena SPF 50, when, in fact, they do not.

27.     Neutrogena has reaped enormous profits from its false marketing and sale of the Neutrogena SPF 55-110 collection.

## CLASS DEFINITION AND ALLEGATIONS

28.     Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Neutrogena for violations of California state laws and/or similar laws in other states:

> **Nationwide and/or Multi-State Class Action**
> All consumers who purchased a Product in the Neutrogena
> SPF 55-110 collection, within the applicable statute of

limitations, in the United States for personal use until the date notice is disseminated.

Excluded from this Class are Neutrogena and its officers, directors and employees, and those who purchased a Product in the Neutrogena SPF 55-110 collection for the purpose of resale.

29.     In the alternative, Plaintiff brings this action on behalf of herself and all other similarly situated California consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

**California-Only Class Action**
All California consumers who purchased a Product in the Neutrogena SPF 55-110 collection, within the applicable statute of limitations, for personal use until the date notice is disseminated.

Excluded from this Class are Neutrogena and its officers, directors and employees and those who purchased a Product in the Neutrogena SPF 55-110 collection for the purpose of resale.

30.     ***Numerosity***.  The members of the Class are so numerous that joinder of all members of the Class is impracticable.   Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of the Neutrogena SPF 55-110 collection who have been damaged by Neutrogena's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

31.     ***Existence and Predominance of Common Questions of Law and Fact.*** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.   These common legal and factual questions include, but are not limited to, the following:

(a)     whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(b)     whether Neutrogena's alleged conduct violates public policy;

(c)     whether the alleged conduct constitutes violations of the laws

15

asserted;

(d)      whether Neutrogena engaged in false or misleading advertising;

(e)      whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(f)      whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

32.      **Typicality**.  Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Neutrogena's deceptive sun protection claims that accompanied each and every Product in the Neutrogena SPF 55-110 collection.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

33.      **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

34.      **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Neutrogena.  It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these

issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

35.     The Class also may be certified because Neutrogena has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

36.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Neutrogena from engaging in the acts described, and requiring Neutrogena to provide full restitution to Plaintiff and Class members.

37.     Unless a Class is certified, Neutrogena will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.  Unless a Class-wide injunction is issued, Neutrogena will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I
### Violation of Business & Professions Code §17200, *et seq.*

38.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

39.     Plaintiff brings this claim individually and on behalf of the Class.

40.     As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Neutrogena's conduct because she purchased a Product from the Neutrogena SPF 55-110 collection in reliance on Neutrogena's sun protection claims, but did not receive a Product that provides superior UVB protection, was "waterproof", "sweatproof" and a "sunblock" as compared to less expensive, lower valued SPF products, including Neutrogena SPF 50.

41.     The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL"), and similar laws in other states, prohibits any "unlawful," "fraudulent" or

"unfair" business act or practice and any false or misleading advertising.  In the course of conducting business, Neutrogena committed unlawful business practices by, *inter alia*, making the sun protection claims (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, et seq., 17500, et seq., and the common law.

42.    Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

43.    Neutrogena's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Neutrogena engaged in false advertising, misrepresented and omitted material facts regarding the Neutrogena SPF 55-110 collection, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

44.    As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states, resulting in harm to consumers.  Neutrogena's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, et seq.

45.    There were reasonably available alternatives to further Neutrogena's legitimate business interests, other than the conduct described herein.

46.    Business & Professions Code §17200, et seq., also prohibits any "fraudulent business act or practice."

47.     Neutrogena's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, et seq.

48.     Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Neutrogena's material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and other members of the Class who each purchased a Product from the Neutrogena SPF 55-110 collection. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

49.     As a result of its deception, Neutrogena has been able to reap unjust revenue and profit.

50.     Unless restrained and enjoined, Neutrogena will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

51.     Plaintiff, on behalf of herself, all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Neutrogena from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

**COUNT II**
**Violations of the Consumers Legal Remedies Act –**
**Civil Code §1750 *et seq.***

52.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

53.     Plaintiff brings this claim individually and on behalf of the Class.

54.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act") and similar laws in other states.

Plaintiff is a "consumer" as defined by California Civil Code §1761(d).  The Neutrogena Products in the SPF 55-110 collection are "goods" within the meaning of the Act.

55.     Neutrogena violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Neutrogena SPF 55-110 collection:

(5)     Representing that [the Neutrogena SPF 55-110 collection has] . . . approval, characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

*          *          *

(7)     Representing that [the Neutrogena SPF 55-110 collection is] of a particular standard, quality or grade . . . if [it is] of another.

*          *          *

(9)     Advertising goods . . . with intent not to sell them as advertised.

*          *          *

(16)    Representing that [the Neutrogena SPF 55-110 collection has] been supplied in accordance with a previous representation when [it has] not.

56.     Neutrogena violated the Act by representing and failing to disclose material facts on the Neutrogena SPF 55-110 collection labeling and packaging and associated advertising, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

57.     Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Neutrogena and for restitution and disgorgement.

58.     Pursuant to §1782 of the Act, by letter dated August 10, 2012, Plaintiff notified Neutrogena in writing by certified mail of the particular violations of §1770 of the

20

Act and demanded that Neutrogena rectify the problems associated with the actions detailed above and give notice to all affected consumers of Neutrogena's intent to so act.

59.     Neutrogena failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act. Therefore, Plaintiff further seeks actual, punitive and statutory damages, as appropriate.

60.     Neutrogena's conduct is fraudulent, wanton and malicious.

**COUNT III**
**Breach of Express Warranty**

61.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of the Class.

63.     The Uniform Commercial Code section 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

64.     At all times, California and other states have codified and adopted the provisions in the Uniform Commercial Code governing the express warranty of merchantability.

65.     As discussed above, Neutrogena expressly warranted on each and every Product label that the Neutrogena SPF 55-110 collection are "waterproof", "sweatproof", "sunblock" Products and that the Products' 55, 70, 85, 100 and 110 SPF values provide greater UVB protection than lower SPF valued products.  The sun protection claims made by Neutrogena are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise.  Plaintiff placed importance on Neutrogena's representations.

66.     All conditions precedent to Neutrogena's liability under this contract have been performed by Plaintiff and the Class.

67.     Neutrogena was provided notice of these issues by, *inter alia*, the instant Complaint.

68.     Neutrogena breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a Product that provides superior UVB protection as represented.

69.     As a result of Neutrogena's breach of its contract, Plaintiff and the Class have been damaged in the amount of the price of the Products they purchased.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the Class as requested herein;

B.     Awarding Plaintiff and the proposed Class members damages;

C.     Awarding restitution and disgorgement of Neutrogena's revenues to Plaintiff and the proposed Class members;

D.     Awarding injunctive relief as permitted by law or equity, including: enjoining Neutrogena from continuing the unlawful practices as set forth herein, and directing Neutrogena to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

E.     Awarding statutory and punitive damages, as appropriate;

F.     Ordering Neutrogena to engage in a corrective advertising campaign;

G.     Awarding attorneys' fees and costs; and

H.     Providing such further relief as may be just and proper.

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated: September 10, 2012

BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.


s/*Patricia N. Syverson*
Elaine A. Ryan
Patricia N. Syverson (203111)
Lindsey M. Gomez-Gray
2325 E. Camelback Road, #300
Phoenix, AZ  85016
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone:  (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Todd D. Carpenter (234464)
600 W. Broadway, Suite 900
San Diego, California 92101
tcarpenter@bffb.com
Telephone:  (619) 756-6978

Stewart M. Weltman
122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone:  312-427-3600
Fax: 312-427-1850
sweltman@weltmanlawfirm.com
(OF COUNSEL LEVIN FISHBEIN SEDRAN & BERMAN)

Attorneys for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 10, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 10, 2012.

s/*Patricia N. Syverson*
Patricia N. Syverson (203111)
BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
2325 E. Camelback Road, #300
Phoenix, AZ 85016
psyverson@bffb.com
Telephone:   (602) 274-1100

2